

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TAL INVESTMENTS, LLC,

   Plaintiff,

v.

2726 TALLAHASSEE LODGING, LLC, TEMPEST22, LLC, f/k/a ARCHIMEDEZ INTERNATIONAL, LLC, MOTA REAL ESTATE, LLC, DAVALLS MANAGEMENT, LLC, DAVID STAHL, and WILLIAM DANIEL FRYE,

   Defendants.

Case No. **1:25-CV-4245**

**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT FOR DAMAGES

Tal Investments, LLC ("Tal Investments" or "Plaintiff") files this Verified Complaint against 2726 Tallahassee Lodging, LLC ("2726 LLC"), Tempest22, LLC f/k/a Archimedez International, LLC ("Tempest 22"), Mota Real Estate, LLC ("Mota Real Estate"), Davalls Management, LLC ("Davalls"), David Stahl ("Mr. Stahl"), William Daniel Frye ("Mr. Frye" and, collectively with 2726 LLC, Tempest 22, Mota Real Estate, Davalls, and Mr. Stahl, "Defendants").

## NATURE AND BASIS OF ACTION

1.

The following visual aids may assist the reader in remembering the ownership

1

structure described below:



2.

Plaintiff Tal Investments is a real estate investment firm formed by nonparty Yirmiahu "Jeremy" Tal ("Mr. Tal").

3.

Mr. Tal is close friends with nonparty Pinhas Ben-Yehoshua ("Mr. Ben-Yehoshua"), who is the 40% owner of nonparty Paradise Capital Investments, LLC ("Paradise Capital").

4.

The remaining 60% interest in Paradise Capital is owned 50% by Mr. Frye, Mr. Ben-Yehoshua's brother-in-law, and 10% by an unnamed nonparty.

5.

In or around December 2022, Mr. Frye approached Mr. Tal and Mr.

Ben-Yehoshua regarding an investment opportunity in Tallahassee, Florida.

6.

Mr. Frye, in addition to his role at Paradise Capital, owns and operates Tempest 22, f/k/a Archimedez International, a real estate brokerage firm.

7.

Mr. Frye, on behalf of himself and Tempest 22, pitched Mr. Tal and Mr. Ben-Yehoshua a business plan for investment in a Howard Johnson Hotel located at 2726 N. Monroe Street, Tallahassee, Florida 32303 (the "Hotel").

8.

At the time of the pitch, Mr. Stahl, Mota Real Estate, and nonparty Globemaster Ventures, LLC owned 63%, 25%, and 12% interests in 2726 LLC, respectively, the entity purportedly holding title to the Hotel.

9.

Mr. Frye, on behalf of himself and Tempest 22 (collectively "Broker Defendants") pitched Mr. Tal and Mr. Ben-Yehoshua a 24% ownership interest in 2726 LLC for a $522,000.00 investment, promising a 29% return on investment ("ROI") in three years.

10.

In early March 2023, Tal Investments and Paradise Capital wired $261,000.00 to Mr. Frye, in his capacity as an agent of Tempest 22, for transfer to 2726 LLC.

11.

Despite representations to the contrary, Mr. Frye, as agent of Tempest 22, wired Plaintiff's portion of the investment, $130,500.00, to Mr. Stahl individually, instead of 2726 LLC.

12.

Broker Defendants' representations to Tal Investments were fraudulent because Broker Defendants had prior knowledge that the Hotel was failing financially at the time of investment.

13.

Moreover, despite contractual obligations to the contrary, Plaintiff's substantial investment funds were not received by 2726 LLC because Mr. Stahl retained those funds and, unbeknownst to Plaintiff, also retained title to the Hotel.

14.

Broker Defendants received a $110,000.00 brokerage fee for securing Plaintiff's investment in the Hotel.

15.

In addition to receiving Plaintiff's investment funds, Mr. Stahl also received $4,500.00/month through his property management company, Davalls, who was engaged as the property manager for the Hotel.

16.

By November 2024, less than two years after Plaintiff's investment, the Hotel had ceased operating, became delinquent on its mortgage payments, and was on the verge of foreclosure.

17.

While Defendants collected hundreds of thousands of dollars, Tal suffered severe losses due to Defendants' unlawful actions.

## PARTIES, JURISDICTION, AND VENUE

18.

Plaintiff Tal Investments, LLC is a Georgia limited liability company.

19.

Defendant 2726 Tallahassee Lodging, LLC is a Florida limited liability company with its principal place of business at 2726 N. Monroe Street, Tallahassee, Florida 32303. 2726 LLC may be served with process through its registered agent, David A. Stahl at 12776 SE 97th Terrace Road, Summerfield, Florida 34491.

20.

Defendant Tempest22, LLC is a North Carolina limited liability company with its principal place of business at 3225 McLeod Drive, Suite 100, Las Vegas, Nevada 89121. Tempest 22 may be served with process through its registered agent, Anderson Registered Agents, Inc., at 8480 Honeycutt Road,

Suite 200-v88, Raleigh, North Carolina 27615.

21.

Defendant Mota Real Estate, LLC is a North Carolina limited liability company with its principal place of business at 3225 McLeod Dr, Suite 100 Las Vegas, Nevada 89121. Mota Real Estate may be served with process through its registered agent, Anderson Registered Agents, Inc., at 1716 Capitol Ave, Suite 100 Cheyenne, Wyoming 82001.

22.

Defendant Davalls Management, LLC is a Florida limited liability company with its principal place of business at 12776 Southeast 97th Terrace Road, Summerfield, Florida 34491. Davalls may be served with process through its registered agent, Davalls Management, LLC, 12776 Southeast 97th Terrace Road, Summerfield, Florida 34491.

23.

Defendant David Stahl is an individual resident of the State of Florida. Upon information and belief, Mr. Stahl may be served with process at 12776 Southeast 97th Terrace Road, Summerfield, Florida 34491.

24.

Defendant William Daniel Frye is an individual resident of the State of Georgia. Upon information and belief, Mr. Frye may be served with process at 2500

Pleasant Hill Road, Apartment 1415, Duluth, GA 30096.

25.

Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1331, and 18 U.S.C. §§ 1964, 1965.

## FACTUAL ALLEGATIONS

### A. Background Facts

26.

In or around December 2022, Mr. Tal and Mr. Ben-Yehoshua, on behalf of Plaintiff and Paradise Capital, along with various military veterans familiar with Tempest 22, were approached by Broker Defendants about a "lucrative" hotel investment in Tallahassee, Florida.

27.

Specifically, Broker Defendants pitched potential investors a "joint venture offering" whereby Plaintiff, together with unnamed investors, would own twenty-four percent of the Hotel.

28.

Tempest 22 is a self-proclaimed investment firm specializing in aiding military veterans secure "high-profit, passive investments" "normally reserved for the few, wealthy investors in-the-know," focusing on hotel and motel portfolios.

7

29.

Tempest 22 is owned and operated by Mr. Frye.

30.

The details of Broker Defendants' pitch was the following:

a) The acquisition price for the Hotel was $2,750,000.00;

b) The Hotel was appraised at $3,100,000.00;

c) Defendants expected to sell the Hotel for $5,100,000.00 in early 2025;

d) The expected return on investment over three years was 29%;

e) The total required investment was $522,000.00 for 24% ownership on a three-year hold; and

f) The joint venture parties would include Mr. Stahl, Mota Real Estate, and nonparty Globemaster Ventures, LLC, who collectively formed 2726 LLC to purportedly hold title to the Hotel, along with Plaintiff, Paradise Capital, and certain unnamed investors.

31.

To secure and retain Plaintiff's substantial investment, Broker Defendants made numerous fraudulent misrepresentations to Plaintiff, including, but not limited to, the following:

a) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, told Plaintiff by email that the "[o]pportunity has not been better to invest in

8

hotels in more than a generation;"

b) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, told Plaintiff by email that the $2,200,000.00 "[l]oan [for the Hotel] is already in place and personally guaranteed by . . . David Stahl. There is no recourse on the debt to [Plaintiff];"

c) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, told Plaintiff by email and in phone communications that 2726 LLC will hold title to the Hotel;

d) In or around January 2023, Mr. Frye, on behalf of Tempest 22, represented to Plaintiff on Tempest 22's website that Plaintiff's investment was "100% secured;"

e) On or about February 24, 2023, Mr. Frye, on behalf of himself and Tempest 22, emailed Plaintiff an option agreement, providing Plaintiff an exit clause, whereby Plaintiff could withdraw from the joint venture, with a full return of its initial investment, if the Hotel did not sell within two years; Mr. Stahl approved the option agreement by email the same day;

f) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, represented to Plaintiff via email that the Hotel "sold out [rooms] nearly every week since [] April 2022;"

g) Throughout January and February 2023, in numerous phone conversations,

Mr. Frye, on behalf of himself and Tempest 22, together with Mr. Stahl, represented to Plaintiff that the Hotel was profitable;

h) In or around mid-February 2023, in a phone conversation, Mr. Frye, on behalf of himself and Tempest 22, together with Mr. Stahl, represented to Plaintiff that there was a potential buyer for the Hotel;

i) In or around January 2023, in a phone conversation, Mr. Stahl told Plaintiff that any potential buyer's offer for the Hotel needed to "start with a four;" and

j) On or about July 7, 2024, Mr. Stahl communicated via email to Plaintiff that there were several offers made on the Hotel for "3.1[] million."

32.

Broker Defendants additionally provided Plaintiffs with due diligence documents for the Hotel, including general ledgers and profit and loss statements reflecting the Hotel's profitable annual income.

33.

Based on Mr. Yehoshua's familial relationship with Mr. Frye, and based on Broker Defendants' fraudulent misrepresentations, Plaintiff, together with Paradise Capital, wired $261,000.00 to Tempest 22 in or around early March 2023, for investment in the Hotel.

## B. The Operative Documents

34.

In anticipation of payment of the investment funds described above, Plaintiff and Paradise Capital were joined as members of 2726 LLC on or about March 3, 2023.

35.

Prior to Plaintiff's investment, 2726 LLC was governed by 2726 LLC's original operating agreement (the "Original Operating Agreement").

36.

Pursuant to Section 6 of the Original Operating Agreement, the members, their capital contributions and their ownership interests were:

a) David A. Stahl – 63% ownership for an undisclosed capital contribution, 24% of which to be sold to Plaintiff and related investors;

b) Mota Real Estate – 25% ownership with a capital contribution of $428,000.00; and

c) Nonparty Globemaster Ventures, LLC – 12% ownership with a capital contribution of $261,000.00.

37.

In anticipation of Plaintiff's investment, the owners of 2726 LLC executed an Amended Operating Agreement (the "Amended Operating Agreement"), adding

Plaintiff and Paradise Capital as members and creating the following membership structure:

a) David A. Stahl – 51% ownership for an undisclosed capital contribution;

b) Mota Real Estate – 25% ownership with a capital contribution of $428,000.00;

c) Nonparty Globemaster Ventures, LLC – 12% ownership with a capital contribution of $261,000.00;

d) Paradise Capital – 6% ownership with a capital contribution of $130,500.00; and

e) Tal Investments – 6% ownership with a capital contribution of 130,500.00.

38.

Section 19 of the Amended Operating Agreement obligates the members to comply with the duty of loyalty.

39.

Sections 42 and 43 of the Amended Operating Agreement provide certain recordation obligations and inspection rights to the members:

**Records**

42. The Company will at all times maintain accurate records of the following:

a. Information regarding the status of the business and the financial condition of the Company.

b. A copy of the Company federal, state, and local income taxes for each year, promptly after becoming available.

12

c. Name and last known business, residential, or mailing address of each Member, as well as the date that person became a Member.

d. A copy of this Agreement and any articles or certificate of formation, as well as all amendments, together with any executed copies of any written powers of attorney pursuant to which this Agreement, articles or certificate, and any amendments have been executed.

e. The cash, property, and services contributed to the Company by each Member, along with a description and value, and any contributions that have been agreed to be made in the future.

43. Each Member has the right to demand, within a reasonable period of time, a copy of any of the above documents for any purpose reasonably related to their interest as a Member of the Company, at their expense.

40.

Pursuant to Section 46 of the Amended Operating Agreement, each member was granted audit rights for 2726 LLC's books and records.

41.

Section 66 of the Amended Operating Agreement provides that "title to all [2726 LLC] property will remain in the name of [2726 LLC]. No Member or group of Members will have any ownership interest in [2726 LLC] property in whole or in part."

42.

Sections 54-59 of the Amended Operating Agreement contain governance

13

guidelines for the Members, outlining certain forbidden acts:

54. No Member may do any act in contravention of this Agreement.

55. No Member may permit, intentionally or unintentionally, the assignment of express, implied or apparent authority to a third party that is not a Member of the Company.

56. No Member may do any act that would make it impossible to carry on the ordinary business of the Company.

57. No Member will have the right or authority to bind or obligate the Company to any extent with regard to any matter outside the intended purpose of the Company.

58. No Member may confess a judgment against the Company.

59. Any violation of the above forbidden acts will be deemed an Involuntary Withdrawal and may be treated accordingly by the remaining Members.

43.

Finally, pursuant to Section 64 of the Amended Operating Agreement, the following actions require the unanimous consent of all members:

**Actions Requiring Unanimous Consent**

a. Incurring Company liabilities over $10,000.00.

b. Incurring a single transaction expense over $10,000.00.

c. Endangering the ownership or possession of Company property including selling, transferring or loaning any Company property or using any Company property as collateral for a loan.

d. Releasing any Company claim except for payment in full.

## C. Defendants' Wrongful Conduct

44.

Despite representations by Broker Defendants that all funds were being transferred to 2726 LLC for the purchase and operation of the Hotel, Plaintiff's funds, together with funds from the remaining investors, were transferred as follows:

a) $428,000.00 to the closing attorney on or about April 14, 2022 for the investment in the Hotel;

a) $125,000.00 to 2726 LLC on or about January 27, 2023, for renovations and maintenance of the Hotel;

b) $81,000.00 to Mr. Stahl's personal bank account on or about January 27, 2023; and

c) $206,000.00 to Mr. Stahl's personal bank account on or about March 13, 2023.

45.

When Plaintiff confronted Broker Defendants regarding the above-described wire transfers to Mr. Stahl, Broker Defendants stated that the funds were wired pursuant to "[Mr. Frye]'s original agreement with [Mr. Stahl]."

46.

Mr. Stahl represented to Plaintiff that he personally loaned 2726 LLC funds to purchase the Hotel and that the funds transferred to his personal bank account were simply repayment of that loan, despite the failure of either Broker Defendants

15

or Mr. Stahl to disclose any personal loan to Plaintiff.

47.

In addition to the wrongfully transferred funds, Davalls, owned by Mr. Stahl, profited by "managing" the Hotel, receiving a $4,500.00 monthly fee.

48.

Concerned by Broker Defendants' misrepresentations regarding the investment structure, Plaintiff requested copies of all closing documents and purchase and sale agreements for the Hotel.

49.

Broker Defendants refused to provide the requested documents.

50.

Five months after Plaintiff's investment, Broker Defendants informed Plaintiff that the Hotel had been severely damaged by Hurricane Idalia.

51.

Broker Defendants represented to Plaintiff that the Hotel's casualty insurance provider classified the damage from Hurricane Idalia as "flood damage" and would not cover the damage to the Hotel.

52.

It was during this time that Plaintiff discovered 2726 LLC never gained title to the Hotel. Instead, Mr. Stahl used Plaintiff's funds to pay off his own debts,

retaining title to the Hotel in his individual capacity.

53.

Plaintiff demanded return of its initial investment, which Broker Defendants and Mr. Stahl refused.

54.

When Plaintiff confronted Broker Defendants and Mr. Stahl, Mr. Stahl threatened that he would allow the Hotel to go into bankruptcy if Plaintiff sued.

55.

By November 2024, Mr. Stahl had unilaterally closed the Hotel, and People's Bank, the lender for the Hotel, had sent a notice of default and threatened foreclosure.

56.

When Plaintiff demanded unfettered access to the relevant bank accounts and financial documents for the Hotel, Broker Defendants preemptively offered excuses for the Hotel's financial difficulties based on the coronavirus epidemic because, upon information and belief, Broker Defendants knew Plaintiff was going to discover the Hotel's failing financials.

57.

Plaintiff received access to 2726 LLC's QuickBooks in or around November 2024 and discovered the Hotel's monthly profit was substantially less than

17

Defendants' representations. Plaintiff was expressly denied access to 2726 LLC's bank accounts.

58.

Broker Defendants are currently subject to a federal investigation for their involvement in the investment scheme for the Hotel.

59.

Despite the Hotel's failure as a "secure" investment, Broker Defendants continued to profit from Plaintiff's investment.

60.

Broker Defendants each received a brokerage fee for securing Plaintiff's investment, with Tempest 22 alone receiving $110,000.00.

61.

Mr. Stahl, through Davalls, additionally received a $4,500.00 monthly "management fee" for operating the Hotel.

## COUNT I
### Fraud (Against Broker Defendants and Mr. Stahl)

62.

Plaintiff incorporates and realleges the allegations from paragraphs 1 through 61 as if fully restated herein.

63.

Broker Defendants and Mr. Stahl made statements of material fact to Plaintiff

18

with knowledge that the statements were false or with reckless disregard for whether the statements were false, including:

a) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, told Plaintiff by email that the "[o]pportunity has not been better to invest in hotels in more than a generation;"

b) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, told Plaintiff by email that the $2,200,000.00 "[l]oan [for the Hotel] is already in place and personally guaranteed by . . . David Stahl. There is no recourse on the debt to [Plaintiff];"

c) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, told Plaintiff by email and in phone communications that 2726 LLC will hold title to the Hotel;

d) In or around January 2023, Mr. Frye, on behalf of Tempest 22, represented to Plaintiff on Tempest 22's website that Plaintiff's investment was "100% secured;"

e) On or about February 24, 2023, Mr. Frye, on behalf of himself and Tempest 22, emailed Plaintiff an option agreement, providing Plaintiff an exit clause, whereby Plaintiff could withdraw from the joint venture, with a full return of its initial investment, if the Hotel did not sell within two years; Mr. Stahl approved the option agreement by email the same day;

f) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, represented to Plaintiff via email that the Hotel "sold out [rooms] nearly every week since [] April 2022;"

g) Throughout January and February 2023, in numerous phone conversations, Mr. Frye, on behalf of himself and Tempest 22, together with Mr. Stahl, represented to Plaintiff that the Hotel was profitable;

h) In or around mid-February 2023, in a phone conversation, Mr. Frye, on behalf of himself and Tempest 22, together with Mr. Stahl, represented to Plaintiff that there was a potential buyer for the Hotel;

i) In or around January 2023, in a phone conversation, Mr. Stahl told Plaintiff that any potential buyer's offer for the Hotel needed to "start with a four;" and

j) On or about July 7, 2024, Mr. Stahl communicated via email to Plaintiff that there were several offers made on the Hotel for "3.1[] million."

64.

Broker Defendants and Mr. Stahl's fraudulent statements and omissions were for the purpose of inducing Plaintiff to act upon them, and Plaintiff reasonably relied on these statements and omissions to its detriment, including investing $130,500.00 in the Hotel (the "Investment Funds") and allowing Broker Defendants and Mr. Stahl to retain Plaintiff's Investment Funds.

65.

As a direct and proximate result of Broker Defendants and Mr. Stahl's fraud,

Plaintiff has been damaged in an amount to be proven at trial.

## COUNT II
**Recission of Contract (Against Mr. Stahl and Mota Real Estate)**

66.

Plaintiff incorporates and realleges the allegations from paragraphs 1 through

61 as if fully restated herein.

67.

Broker Defendants and Mr. Stahl made numerous false representations,

including those listed in Paragraphs 30-31, to induce Plaintiff to enter into the

Amended Operating Agreement and to pay the Investment Funds.

68.

Based on this fraudulent inducement, Plaintiff elects to rescind the Amended

Operating Agreement, including the agreement to pay the Investment Funds.

69.

As a result, Plaintiff is entitled to a return of all money paid pursuant and

related to the Amended Operating Agreement.

21

**COUNT III**
**Breach of Contract (Against Mr. Stahl and Mota Real Estate)**
**(in the alternative)**

70.

Plaintiff incorporates and realleges the allegations from paragraphs 1 through 61 as if fully restated herein.

71.

Plaintiff entered into the Amended Operating Agreement with Mr. Stahl, Mota Real Estate, and nonparties Paradise Capital, LLC and Globemaster Ventures, LLC for the operation of 2726 LLC.

72.

The Amended Operating Agreement is a valid and binding contract.

73.

Defendants Mr. Stahl and Mota Real Estate breached their obligations under the Amended Operating Agreement by failing to provide Plaintiff access to 2726 LLC's books and records, by endangering the ownership or possession of the Hotel, by closing the Hotel and failing to make mortgage payments without the express written consent of Plaintiff, and by allowing Mr. Stahl to retain title to the Hotel.

74.

If the Court finds that Plaintiff is not entitled to rescind the Amended Operating Agreement, alternatively, Mr. Stahl and Mota Real Estate are liable to

Plaintiff for their breaches of contract, entitling Plaintiff to damages in an amount to be proven at trial.

## COUNT IV
### Breach of Fiduciary Duty (Against Mr. Stahl and Mota Real Estate)

75.

Plaintiff incorporates and realleges the allegations from paragraphs 1 through 61 as if fully restated herein.

76.

As members of 2726 LLC, Mr. Stahl and Mota Real Estate owed fiduciary duties to Plaintiff, including a duty not to deprive 2726 LLC of its sole source of income without the consent of Plaintiff and to not jeopardize 2726 LLC's property.

77.

Mr. Stahl and Mota Real Estate have willfully and intentionally breached their fiduciary duties to Plaintiff by, among other things, unilaterally closing the Hotel and failing to make mortgage payments to 2726 LLC's lender without the express consent of Plaintiff.

78.

As a result of Mr. Stahl and Mota Real Estate's breaches of fiduciary duty, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT V
### Negligent Misrepresentation (Against Broker Defendants and Mr. Stahl)
### (in the alternative)

79.

Plaintiff incorporates and realleges the allegations from paragraphs 1 through 61 as if fully restated herein.

80.

Broker Defendants and Mr. Stahl made the following statements of material fact to Plaintiff:

a) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, told Plaintiff by email that the "[o]pportunity has not been better to invest in hotels in more than a generation;"

b) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, told Plaintiff by email that the $2,200,000.00 "[l]oan [for the Hotel] is already in place and personally guaranteed by . . . David Stahl. There is no recourse on the debt to [Plaintiff];"

c) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, told Plaintiff by email and in phone communications that 2726 LLC will hold title to the Hotel;

d) In or around January 2023, Mr. Frye, on behalf of Tempest 22, represented to Plaintiff on Tempest 22's website that Plaintiff's investment was "100%

24

secured;"

e) On or about February 24, 2023, Mr. Frye, on behalf of himself and Tempest 22, emailed Plaintiff an option agreement, providing Plaintiff an exit clause, whereby Plaintiff could withdraw from the joint venture, with a full return of its initial investment, if the Hotel did not sell within two years; Mr. Stahl approved the option agreement by email the same day;

f) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, represented to Plaintiff via email that the Hotel "sold out [rooms] nearly every week since [] April 2022;"

g) Throughout January and February 2023, in numerous phone conversations, Mr. Frye, on behalf of himself and Tempest 22, together with Mr. Stahl, represented to Plaintiff that the Hotel was profitable;

h) In or around mid-February 2023, in a phone conversation, Mr. Frye, on behalf of himself and Tempest 22, together with Mr. Stahl, represented to Plaintiff that there was a potential buyer for the Hotel;

i) In or around January 2023, in a phone conversation, Mr. Stahl told Plaintiff that any potential buyer's offer for the Hotel needed to "start with a four;" and

j) On or about July 7, 2024, Mr. Stahl communicated via email to Plaintiff that there were several offers made on the Hotel for "3.1[] million."

81.

To the extent Broker Defendants and Mr. Stahl's misrepresentations are not fraudulent, Broker Defendants and Mr. Stahl negligently made numerous misrepresentations to Plaintiff regarding the security of its investment and the profitability of the Hotel.

82.

Plaintiff reasonably relied on Broker Defendants and Mr. Stahl's misrepresentations and omissions.

83.

As a direct and proximate result of Broker Defendants and Mr. Stahl's negligent misrepresentations, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT VI
## Conversion (Against Mr. Stahl)

84.

Plaintiff incorporates and realleges the allegations from paragraphs 1 through 61 as if fully restated herein.

85.

Plaintiff is the lawful owner of the Investment Funds.

86.

Mr. Stahl was entrusted with Plaintiff's Investment Funds as payment for

Plaintiff's interest in 2726 LLC and the Hotel.

87.

Mr. Stahl did not use Plaintiff's Investment Funds to purchase the Hotel in 2726 LLC's name, and Mr. Stahl retains title to the Hotel individually.

88.

Mr. Stahl has prevented Plaintiff from accessing the Investment Funds and is currently misappropriating the Investment Funds by retaining them without Plaintiff's consent.

89.

Mr. Stahl has converted Plaintiff's Investment Funds to his own use, and demand has been made for return of Plaintiff's investment funds.

90.

As a direct and proximate result of Mr. Stahl's conversion, Plaintiff has been damaged in an amount to be proven at trial, but in no event less than $130,000.00.

## COUNT VII
### Unjust Enrichment (Against Mr. Stahl)
### (in the alternative)

91.

Plaintiff incorporates and realleges the allegations from paragraphs 1 through 61 as if fully restated herein.

92.

Mr. Stahl was entrusted with Plaintiff's Investment Funds as payment for Plaintiff's interest in 2726 LLC and the Hotel.

93.

The Investment Funds belong to Plaintiff, and Mr. Stahl has no legal right to retain them.

94.

Should the Court determine Mr. Stahl has not converted Plaintiff's Investment Funds, Mr. Stahl would be unjustly enriched if Mr. Stahl was permitted to retain Plaintiff's Investment Funds.

## COUNT VIII
### Promissory Estoppel (Against Mr. Stahl and Mota Real Estate)
### (in the alternative)

95.

Plaintiff incorporates and realleges the allegations from paragraphs 1 through 61 as if fully restated herein.

96.

To the extent the Amended Operating Agreement is not a contract, the Amended Operating Agreement nonetheless contained promises upon which Mr. Stahl and Mota Real Estate knew or should have reasonably expected Plaintiff to rely upon and to act or refrain from acting in reliance thereupon.

97.

Plaintiff did in fact reasonably and prudently rely on Mr. Stahl and Mota Real Estate's promises, including the promise to safeguard 2726 LLC's property and provide Plaintiff access to 2726 LLC's books and records.

98.

Injustice can only be avoided by enforcement of the promises made by Mr. Stahl and Mota Real Estate to Plaintiff.

99.

In the absence of a contract, Mr. Stahl and Mota Real Estate are liable to Plaintiff based on promissory estoppel for damages in an amount to be proven at trial.

## COUNT IX
### Books and Records (Against 2726 LLC)

100.

Plaintiff incorporates and realleges the allegations from paragraphs 1 through 61 as if fully restated herein.

101.

Pursuant to Sections 42 and 43 of the Amended Operating Agreement and applicable law (e.g., §§ 605.0410, 605.0411, Fla. Stat.), 2726 LLC was required to make its books and records available for inspection to any member who makes reasonable demand.

102.

Between January and July of 2024, Plaintiff emailed the members of 2726 LLC multiple times requesting access to 2726 LLC's books and records.

103.

Despite these demands, 2726 LLC, through its members, Mr. Stahl and Mota Real Estate, failed to provide access to the requested documents.

104.

Plaintiff has been damaged as a result of 2726 LLC's failure to comply with its contractual and statutory obligations.

## **COUNT X**
**Violations of the Georgia Racketeer Influenced and Corrupt Organizations Act (Against All Defendants)**

105.

Plaintiff incorporates and realleges the allegations from paragraphs 1 through 61 as if fully restated herein.

106.

At all relevant times, Defendants, through a pattern of racketeering activity, acquired and maintained, directly and indirectly, interests in personal property owned by Plaintiff, including money. Such illegal activity is prohibited pursuant to O.C.G.A. §§ 16-14-4(a)-(c), and in this case, includes violations of O.C.G.A. § 16-8-1, *et seq.* relating to theft and wire fraud under 18 U.S.C. § 1343.

107.

Defendants engaged in the following illegal activities: (a) unlawfully taking and appropriating Plaintiff's property, including money, by deceitful means or artful practice with the intention of depriving Plaintiff of the property, by intentionally creating or confirming Plaintiff's impression that Defendants were using said amounts on behalf of Plaintiff, which was false and which Defendants knew to be false and (b) committing wire fraud by making communications using the United States wires in an attempt to facilitate and perpetrate Defendants' scheme to defraud and deprive Plaintiff of the full rights of its property.

108.

Specifically, Defendants made the following fraudulent statements of material fact to Plaintiff over both the telephone and email communications:

a) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, told Plaintiff by email that the "[o]pportunity has not been better to invest in hotels in more than a generation;"

b) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, told Plaintiff by email that the $2,200,000.00 "[l]oan [for the Hotel] is already in place and personally guaranteed by . . . David Stahl. There is no recourse on the debt to [Plaintiff];"

c) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22,

told Plaintiff by email and in phone conversations that 2726 LLC will hold title to the Hotel;

d) In or around January 2023, Mr. Frye, on behalf of Tempest 22, represented to Plaintiff on Tempest 22's website that Plaintiff's investment was "100% secured;"

e) On or about February 24, 2023, Mr. Frye, on behalf of himself and Tempest 22, emailed Plaintiff an option agreement, providing Plaintiff an exit clause, whereby Plaintiff could withdraw from the joint venture, with a full return of its initial investment, if the Hotel did not sell within two years; Mr. Stahl approved the option agreement by email the same day;

f) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, represented to Plaintiff via email that the Hotel "sold out [rooms] nearly every week since [] April 2022;"

g) Throughout January and February 2023, in numerous phone conversations, Mr. Frye, on behalf of himself and Tempest 22, together with Mr. Stahl, represented to Plaintiff that the Hotel was profitable;

h) In or around mid-February 2023, in a phone conversation, Mr. Frye, on behalf of himself and Tempest 22, together with Mr. Stahl, represented to Plaintiff that there was a potential buyer for the Hotel;

i) In or around January 2023, in a phone conversation, Mr. Stahl told Plaintiff

that any potential buyer's offer for the Hotel needed to "start with a four;" and

j) On or about July 7, 2024, Mr. Stahl communicated via email to Plaintiff that there were several offers made on the Hotel for "3.1[] million."

109.

Defendants' conduct described above constitutes violations of the Georgia Racketeering Influenced and Corrupt Organizations Act (O.C.G.A. § 16-14-1 *et seq.*) ("Georgia RICO").

110.

Defendants' racketeering activity had the same or similar intent: to steal or otherwise misappropriate Plaintiff's personal property.

111.

Defendants' racketeering activity had the same or similar results: Plaintiff was deceived and unlawfully induced to part with its money.

112.

Defendants' racketeering activity had the same victim: Plaintiff.

113.

Defendants' racketeering activity had the same or similar methods of commission: Defendants abused their duties to and/or positions of trust with Plaintiff to defraud Plaintiff by making material misrepresentations and or concealing and/or omitting material facts.

114.

Defendants racketeering activities are sufficiently interrelated or connected so as to create a "pattern of racketeering activity" within the meaning of O.C.G.A. § 16-14-3(4).

115.

Defendants were associated with an "enterprise" within the meaning of O.C.G.A. § 16-14-3(3) and conducted and participated in, directly or indirectly, the affairs of the enterprise through a pattern of racketeering activity.

116.

As a direct and proximate result of Defendants' violations of Georgia RICO, Defendants have injured Plaintiff within the meaning of O.C.G.A. § 16-14-6(c).

117.

Plaintiff is entitled to recover from Defendants sums or damages that will make Plaintiff whole and compensate Plaintiff for its injuries.

118.

Plaintiff is also entitled to three times the actual damages sustained and to recover its attorneys' fees and costs of litigation reasonably incurred under O.C.G.A. § 16-14-6(c).

## COUNT XI
### Violations of the Federal Racketeer Influenced and Corrupt Organizations Act (Against All Defendants)

119.

Plaintiff incorporates and realleges the allegations from paragraphs 1 through 61 as if fully restated herein.

120.

At all relevant times, Defendants, through a pattern of racketeering activity, acquired and maintained, directly or indirectly, interests in personal property owned by Plaintiff, including money. Such illegal activity is prohibited pursuant to 18 U.S.C. § 1961(1), and, in this case, includes violations of 18 U.S.C. § 1961(1)(A), relating to wire fraud under 18 U.S.C. § 1343.

121.

Defendants committed wire fraud by making communications using the United States wires in an attempt to facilitate and perpetrate Defendants' scheme to defraud and deprive Plaintiff of the full rights of its property.

122.

Specifically, Defendants made the following fraudulent statements of material fact to Plaintiff over both the telephone and email communications:

a) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, told Plaintiff by email that the "[o]pportunity has not been better to invest in

hotels in more than a generation;"

b) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, told Plaintiff by email that the $2,200,000.00 "[l]oan [for the Hotel] is already in place and personally guaranteed by . . . David Stahl. There is no recourse on the debt to [Plaintiff];"

c) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, told Plaintiff by email and in phone conversations that 2726 LLC will hold title to the Hotel;

d) In or around January 2023, Mr. Frye, on behalf of Tempest 22, represented to Plaintiff on Tempest 22's website that Plaintiff's investment was "100% secured;"

e) On or about February 24, 2023, Mr. Frye, on behalf of himself and Tempest 22, emailed Plaintiff an option agreement, providing Plaintiff an exit clause, whereby Plaintiff could withdraw from the joint venture, with a full return of its initial investment, if the Hotel did not sell within two years; Mr. Stahl approved the option agreement by email the same day;

f) In or around January 2023, Mr. Frye, on behalf of himself and Tempest 22, represented to Plaintiff via email that the Hotel "sold out [rooms] nearly every week since [] April 2022;"

g) Throughout January and February 2023, in numerous phone conversations,

Mr. Frye, on behalf of himself and Tempest 22, together with Mr. Stahl, represented to Plaintiff that the Hotel was profitable;

h) In or around mid-February 2023, in a phone conversation, Mr. Frye, on behalf of himself and Tempest 22, together with Mr. Stahl, represented to Plaintiff that there was a potential buyer for the Hotel;

i) In or around January 2023, in a phone conversation, Mr. Stahl told Plaintiff that any potential buyer's offer for the Hotel needed to "start with a four;" and

j) On or about July 7, 2024, Mr. Stahl communicated via email to Plaintiff that there were several offers made on the Hotel for "3.1[] million."

123.

Defendants' conduct described above constitutes violations of the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("Federal RICO").

124.

Defendants are all "persons" within the meaning of the Federal RICO Act and collectively constitute an association-in-fact "enterprise."

125.

Defendants engaged in a "pattern of racketeering activity" by committing at least two separate acts of wire fraud, including soliciting and receiving Plaintiff's Investment Funds, funds wired by nonparty Paradise Capital, and funds wired by

unnamed investors.

126.

Defendants have contractual and other relationships with each other and are collaborating to contribute to the enterprise's efforts to defraud Plaintiff, and Defendants' other investors, and thereby engage in an ongoing pattern of racketeering activity.

127.

Plaintiff invested in what Plaintiff believed to be a profitable and "secure" investment, namely the Hotel, but, adverse to Defendants' representations, the Hotel was failing prior to Plaintiff's investment, was valued significantly lower, and produced a negative ROI.

128.

Federal RICO creates a private right of action for "[a]ny person injured in his business or property by reason of violation of [18 U.S.C. § 1962]. 18 U.S.C. § 1964(c). Pursuant to 18 U.S.C. § 1962(c), it is "unlawful for any person employed or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

129.

Additionally, pursuant to 18 U.S.C. § 1962(b), "it shall be unlawful for any person through a pattern of racketeering activity" "to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

130.

Finally, 18 U.S.C. § 1962(d) provides that "it shall be unlawful for any person to conspire to violate any of the provisions of . . . this section."

131.

Defendants, directly and indirectly, conspired to defraud Plaintiff, and various other investors, including Paradise Capital, by committing wire fraud to improperly acquire Plaintiff's Investment Funds to further the operation of Defendants' association-in-fact enterprise, namely the operation of the Hotel.

132.

The funding and services procured by the enterprise have moved in interstate commerce, and the very nature of the enterprise, namely the operation of the Hotel, explicitly affects interstate commerce.

133.

The racketeering activities of Defendants directly and proximately injured Plaintiff and Plaintiff's property by using the wires to improperly acquire and

maintain Plaintiff's Investment Funds. Each separate solicitation and receipt of funds from Plaintiff, Paradise Capital, and unnamed investors, is a separate predicate act under Federal RICO.

134.

Plaintiff and Plaintiff's property has been damaged by Plaintiff being defrauded of its Investment Funds and Plaintiff therefore seeks treble damages, attorneys' fees and costs.

## COUNT XII
### Punitive Damages (Against All Defendants)

135.

Plaintiff incorporates and realleges the allegations from paragraphs 1 through 61 as if fully restated herein.

136.

Defendants' actions described in this Complaint show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences, justifying imposition of punitive damages.

## COUNT XIII
### Attorneys' Fees and Expenses (Against All Defendants)

137.

Plaintiff incorporates and realleges the allegations from paragraphs 1 through

61 as if fully restated herein.

138.

Plaintiff is entitled to recover its costs of litigation, including attorneys' fees, pursuant to O.C.G.A. § 13-6-11 because Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense.

**WHEREFORE**, Plaintiff prays that final judgment be entered in its favor and against Defendants as follows:

a. Judgment against all Defendants on each applicable count of this Complaint;

b. Compensatory and actual damages as a result of Defendants' conduct;

c. Rescission of the Amended Operating Agreement and related agreements, including payment of the Investment Funds;

d. Punitive, exemplary, or treble damages as authorized by law;

e. Attorneys' fees and costs pursuant to O.C.G.A. § 13-16-11; and

f. On each of Plaintiff's claims for relief, such further and other relief as the Court deems just and proper.

Respectfully submitted this 30th day of July, 2025.

*/s/ Christopher W. Timmons*
Christopher W. Timmons
Georgia Bar No.: 712659
ctimmons@kgtfirm.com

Ramsey A. Knowles
Georgia Bar No.: 426726
rknowles@kgtfirm.com
Karen E. Bain
Georgia Bar No.: 495153
kbain@kgtfirm.com
Jordan V. Davies
Georgia Bar No.: 501722
jdavies@kgtfirm.com

KNOWLES GALLANT TIMMONS LLC
6400 Powers Ferry Road – Suite 350
Atlanta, Georgia 30339
Telephone:   (404) 818-7330
*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TAL INVESTMENTS, LLC,

      Plaintiff,

    Case No._____

v.

2726 TALLAHASSEE LODGING,  **JURY TRIAL DEMANDED**
LLC, et al.,

      Defendants.

## **VERIFICATION**

Jeremy Tal, as member of Tal Investments, LLC, declares under penalty of perjury under the laws of the United States that the foregoing *Verified Complaint for Damages* is true and correct, except as to those things stated upon information and belief, and as to those, Mr. Tal believes them to be true. The precise wording of the *Verified Complaint for Damages* is that of legal counsel.

Executed this __28th__ day of July, 2025.



Jeremy Tal
Member, Tal Investments, LLC